```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------X
ONEIDA LTD.,

                Plaintiff,            OPINION

        -against-                     06 Civ. 15323 (MGC)


PENSION BENEFIT GUARANTY
CORPORATION,

                Defendant.
--------------------------------X

APPEARANCES:

        SHEARMAN & STERLING LLP
        Attorneys for Plaintiff
        599 Lexington Avenue
        New York, New York 10022

        By: William J.F. Roll, III, Esq.
            Douglas P. Bartner, Esq.
            Lynette C. Kelly, Esq.
            Michael H. Torkin, Esq.

        STEPTOE & JOHNSON LLP
        Attorneys for Defendant
        750 Seventh Avenue
        Suite 1900
        New York, New York 10019

        By: Greg R. Yates, Esq.
            Charles G. Cole, Esq.

        PENSION BENEFIT GUARANTY CORPORATION
        Office of the Chief Counsel
        1200 K Street, N.W.
        Washington, D.C. 20005-4026

        By: James L. Eggeman, Esq.
            Lawrence F. Landgraff, Esq.
```

**Cedarbaum, J.**

This is a motion to withdraw the reference to the Bankruptcy Court (Gropper, J.) of an adversary proceeding brought by reorganized debtor Oneida Ltd. against Pension Benefit Guaranty Corporation ("PBGC").  Oneida seeks a declaration from the Bankruptcy Court that certain premiums payable to PBGC under the terms of a federal statute are pre-petition claims that were discharged upon Oneida's emergence from bankruptcy.  PBGC moves, pursuant to 28 U.S.C. § 157(d), to withdraw the reference to the Bankruptcy Court, on the ground that the decision will require consideration of both Title 11 and other federal law.  For the following reasons, PBGC's motion is denied.

BACKGROUND

PBGC is the federal agency established by the Employee Retirement Income Security Act ("ERISA") to administer the nation's pension termination insurance program. 29 U.S.C. § 1302.  When a pension plan covered by ERISA is terminated without sufficient assets to pay all of its promised benefits, PBGC typically becomes trustee of the plan and pays participants their benefits.  PBGC funds these payments in part from annual premiums required by ERISA from sponsors of defined pension plans.  29 U.S.C. § 1307.

In 2006, facing a severe deficit in PBGC's funds, Congress passed the Deficit Reduction Act of 2005, which, among other things, amended ERISA to add a premium (the "DRA Premium") to be paid by companies that terminate covered pension plans (the "ERISA Amendment").  29 U.S.C. § 1306(a)(7).  The ERISA Amendment includes a provision that applies specifically to plans terminated by companies that have filed for bankruptcy.  It reads, in relevant part:

> A) In general
>
> If there is a termination of a single-employer plan under clause (ii) or (iii) of section 1341(c)(2)(B) of this title or section 1342 of this title, there shall be payable to [PBGC], with respect to each applicable 12-month period, a premium at a rate equal to $1,250 multiplied by the number of individuals who were participants in the plan immediately before the termination date. Such premium shall be in addition to any other premium under this section.
>
> (B) Special rule for plans terminated in bankruptcy reorganization
>
> In the case of a single-employer plan terminated under section 1341(c)(2)(B)(ii) of this title or under section 1342 of this title during pendency of any bankruptcy reorganization proceeding under chapter 11 of title 11, or under any similar law of a State or a political subdivision of a State (or a case described in section 1341(c)(2)(B)(i) of this title filed by or against such person has been converted, as of such date, to such a case in which reorganization is sought),

>     subparagraph (A) shall not apply to such plan
>     until the date of the discharge or dismissal
>     of such person in such case.
>
>     (C) Applicable 12-month period
>
>     For purpose of subparagraph (A)--
>
>     (i)     In general
>
>     The term "applicable 12-month period" means
>
>     >   (I)     the 12-month period beginning
>     >           with the first month following
>     >           the month in which the
>     >           termination date occurs, and
>     >
>     >   (II)    each of the first two 12-month
>     >           periods immediately following
>     >           the period described in
>     >           subclause (I).
>
>     (ii) Plans terminated in bankruptcy
>     reorganization
>
>     In any case in which the requirements of
>     subparagraph (B) are met in connection with
>     the termination of the plan with respect to 1
>     or more persons described in such
>     subparagraph, the 12-month period described
>     in clause (i)(I) shall be the 12-month period
>     beginning with the first month following the
>     month which includes the earliest date as of
>     which each such person is discharged or
>     dismissed in the case described in such
>     clause in connection with such person.

Oneida established a retirement plan for its employees effective January 1, 1997 (the "Pension Plan"). On March 19, 2006, Oneida filed for bankruptcy and moved for the Bankruptcy Court's approval to terminate the Pension Plan under the distress

4

termination provisions of ERISA.  29 U.S.C. § 1341(c).  On May 2, 2006, the Bankruptcy Court found that Oneida had satisfied the financial requirements for a distress termination of the Pension Plan.  The following day, Oneida, its creditors' committee, and PBGC entered a settlement agreement which addressed the termination of Oneida's Pension Plan and provided, among other things, that nothing in Oneida's Plan of Reorganization would be deemed to "prejudice, preclude or otherwise affect any rights or obligations any of the Parties may have in connection with any premiums arising under [the ERISA Amendment]." (Torkin Decl., Ex. B, ¶ 4.)

On August 30, 2006, the Bankruptcy Court approved Oneida's Plan of Reorganization.  The Plan provided that certain "Specified Unsecured Claims" would receive no recovery and be discharged.  The term "Specified Unsecured Claims" was defined to include "Unsecured PBGC Claims," which in turn was defined as "the aggregate amount owed to the PBGC in connection with the distressed termination of the Pension Plans including pursuant to 29 U.S.C. §§ 1341(c)(2)(B)(ii), as amended . . . ." (Torkin Decl., Ex. A, pp. 7-8.)  The Plan of Reorganization was confirmed on August 31, 2006 and became effective on September 15, 2006.

Since the termination of the Pension Plan in May 2006, Oneida and PBGC have disputed the effect of the reorganization on Oneida's obligation to pay the DRA Premiums.  Oneida alleges that

5

the DRA Premium payments are pre-petition "claims," as defined in section 101(5) of the Bankruptcy Code, that were discharged upon confirmation of the Plan of Reorganization.  PBGC disagrees.  It argues that the ERISA Amendment provides for DRA Premiums to be paid after bankruptcy discharge, and that the Plan of Reorganization does not affect Oneida's obligation to pay the DRA Premiums.

On October 25, 2006, PBGC and Oneida entered into a stipulation preserving their respective rights to challenge or enforce Oneida's obligation to pay the DRA Premiums notwithstanding the language of the Plan of Reorganization.  On November 13, 2006, the parties entered into an escrow agreement pursuant to which Oneida paid into escrow, pending the final resolution of the parties' dispute, the initial DRA Premium that would be due under the ERISA Amendment.  On November 15, 2006, Oneida commenced an adversary proceeding seeking a declaration that the DRA Premiums were pre-petition bankruptcy claims that were discharged pursuant to Oneida's Plan of Reorganization.

DISCUSSION

Mandatory Withdrawal

PBGC contends that withdrawal of the reference is mandatory under 28 U.S.C. § 157(d) because resolution of the adversary proceeding requires consideration of both Title 11 and the ERISA Amendment.  28 U.S.C. § 157(d) provides:

> The district court may withdraw, in whole or in part, any case or proceeding referred under the section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

In order to ensure that it "does not become an 'escape hatch' for matters properly before [the bankruptcy] court," In re Johns-Manville Corp., 63 B.R. 600, 603 (S.D.N.Y. 1986), the Second Circuit has construed § 157(d) narrowly, reserving withdrawal of the reference for "cases or issues that would otherwise require a bankruptcy court judge to engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes." City of New York v. Exxon Corp., 932 F.2d 1020, 1026 (2d Cir. 1991) (emphases added).  Thus, courts in this district have held that withdrawal is not mandatory where a case requires the "straightforward application of a federal statute to a particular set of facts." In re Johns-Manville Corp., 63 B.R. at 602.  The standard for withdrawal of the reference is more easily satisfied when the

non-bankruptcy law under consideration raises complicated issues of first impression which have not yet been considered by a federal court, In re Ionosphere Clubs, Inc., 103 B.R. 416, 419 (S.D.N.Y. 1989), or where a federal provision raises a "sharp conflict with competing provisions of the [Bankruptcy] Code," In re Chateaugay Corp., 86 B.R. 33, 38-39 (S.D.N.Y. 1987).

The determination of when a claim arises and whether it may be discharged is "an inquiry which bankruptcy courts make as a matter of course and does not require intervention by the district court." In re Revere Copper and Brass, Inc., 172 B.R. 192, 198 (S.D.N.Y. 1994).  To resolve the parties' dispute over the DRA Premiums, the Bankruptcy Court will be required to do what it does on a routine basis: determine whether the DRA Premiums are post-petition obligations that must be paid by Oneida upon reorganization, or pre-petition "claims" that may be discharged pursuant to the Plan of Reorganization.  That the inquiry in this case may require the Bankruptcy Court to refer to the language of a recently drafted federal statute does not mandate withdrawal, as PBGC suggests.  To construe section 157(d) so broadly would erode the purpose and function of the bankruptcy courts, and would be an inefficient use of judicial resources.

Bankruptcy judges are well qualified to apply the language of a federal statute to the Bankruptcy Code's definition of a "claim," a definition which they interpret and apply in most

bankruptcies.  The federal provision at issue here is not particularly complex.  Nor do the parties dispute the applicability of the ERISA Amendment itself or the manner in which the DRA Premiums should be calculated.  See In re Ionosphere Clubs, Inc., 922 F.2d 984, 995 (2d Cir. 1990) (holding that bankruptcy court had jurisdiction where application of federal law did "not require the bankruptcy court to engage itself in the intricacies of [a federal statute].").  Because the Bankruptcy Court's inquiry requires a "simple application" rather than a "significant interpretation" of the ERISA Amendment, mandatory withdrawal is not warranted.

Discretionary Withdrawal

Where withdrawal of the reference is not mandatory, a district court may exercise its discretion to withdraw a bankruptcy court reference "for cause shown."  28 U.S.C. § 157(d).  The Second Circuit has instructed district courts to consider the following factors in exercising this discretion: (i) whether the proceeding is a "core" proceeding under 28 U.S.C. § 157(b); (ii) whether the action is legal or equitable; (iii) interests of judicial economy; (iv) interests of uniform bankruptcy administration; (v) reduction of forum shopping; (vi) economical use of debtors' and creditors' resources; (vii)

9

interests of expediting the bankruptcy process; and (viii) the presence of a jury demand.  See In re Orion Pictures Corp., 4 F.3d 1095, 1101 (2d Cir. 1993).

The first of these factors -- whether the proceeding is "core" or "non-core" -- is the most significant.  Section 157(b)(2) sets out a non-exhaustive list of categories of core proceedings, including "matters concerning the administration of the estate" and the "allowance and disallowance of claims against the estate."  More generally, "core proceedings must 'invoke a substantive right' created by federal bankruptcy law that would not exist outside of a bankruptcy case."  In re The VWE Group, Inc., 359 B.R. 441, 448 (S.D.N.Y. 2007) (citations omitted).  Non-core proceedings, on the other hand, "'involve disputes over rights that . . . have little or no relation to the Bankruptcy Code, do not arise under the federal bankruptcy law and would exist in the absence of a bankruptcy case.'"  Id. (citations omitted).

Oneida's adversary proceeding is a core bankruptcy proceeding.  The sole issue to be decided is whether the DRA Premiums are discharged pursuant to Oneida's Plan of Reorganization or remain obligations of Oneida after its discharge.  The specific federal provision on which the Bankruptcy Court must rely to make that decision applies only to companies in bankruptcy reorganization.  Thus, this adversary

10

proceeding involves rights that "would not exist independent of a bankruptcy environment."  See In re Refco, Inc., No. 06 Civ. 1888(GEL), 2006 WL 1379616, *1 (S.D.N.Y. May 16, 2006) (quotations and citations omitted).

Moreover, judicial efficiency and the uniform administration of bankruptcy court proceedings counsel against withdrawing the reference.  Bankruptcy Judge Gropper has presided over this case for more than a year, and has carefully considered and confirmed Oneida's Plan of Reorganization as to all other claims.  He is thoroughly familiar with the dispute between Oneida and PBGC and his view would assist the district court in reviewing the issue in case of an appeal.

Accordingly, discretionary withdrawal of the reference is not warranted.

CONCLUSION

For the foregoing reasons, defendant's motion to withdraw the reference is denied.

SO ORDERED.

Dated:   New York, New York
         July 18, 2007

                              S/_____
                                   MIRIAM GOLDMAN CEDARBAUM
                                   United States District Judge